UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

XINYAO ZHOU,

          Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, and others,

          Defendants.

Case No. 25-cv-04625-NC

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF 28, 29

Plaintiff Xinyao Zhou alleges that Defendants United States Citizenship and Immigration Services (USCIS) and others denied her I-526 immigrant petition pursuant to 8 U.S.C. § 1153(b)(5), commonly known as an EB-5 visa, because she failed to provide information regarding the lawful source of funds for all other investors in the new commercial enterprise (NCE). Before the Court is Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment. For the reasons below, the Court: GRANTS in part and DENIES in part the parties' Cross-Motions for Summary Judgment as follows:

- Plaintiff's Motion for Summary Judgment is GRANTED as to her Administrative Procedure Act, due process, and equitable relief claims;
- Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's equal protection claim; and

United States District Court
Northern District of California

- The Court REMANDS Plaintiff's EB-5 application to Defendants to adjudicate within thirty days without requiring Plaintiff to prove the lawful source of her co-investors' funds.

I.    BACKGROUND

A.    Factual Background

The EB-5 immigrant investor visa program provides a path for immigrant investors to obtain lawful permanent residence in the United States if they invest in an NCE which creates full-time employment for at least 10 U.S. workers. 8 U.S.C. § 1153(b)(5). If a non-citizen investor chooses to invest in an NCE in a "targeted employment area," he or she must invest at least $500,000. 8 U.S.C. § 1153(b)(5)(C). USCIS implements the EB-5 program through regulations which set the procedures for prospective immigrants to apply. *See* 8 C.F.R. § 204.6. The regulation at issue states that for an NCE with "multiple investors," "[t]he establishment of a new commercial enterprise may be used as the basis of a petition for classification as an alien investor even though there are several owners of the enterprise . . . provided that the source(s) of all capital invested is identified and all invested capital has been derived by lawful means." *Id.* § 204.6(g)(1).

On September 22, 2016, Plaintiff applied for an EB-5 visa. Certified Administrative Record (CAR), 5–7. Plaintiff invested $500,000 in a hotel in Yolo County, California. *Id.*

On April 6, 2020, USCIS issued a Notice of Intent to Deny, stating that Plaintiff failed to show that (1) her capital was actively being invested and placed at risk, and (2) "the lawful source(s) of all non-EB5 [*sic*] capital invested in the NCE" by other project investors. CAR 563–568. Plaintiff responded with additional evidence that she had put her capital at risk. CAR 570–72. With respect to the other investors' source of funds, Plaintiff noted that "[d]ue to privacy concerns, the managing partners of the project are having difficulties providing proof of the non-EB-5 investors' lawfulness of fund [*sic*]." *Id.* at 573. Plaintiff further highlighted that "the requirement of the proof of lawfulness of the non-EB-5 investors' funds creates [*sic*] irrational burden on EB-5 investors" and

"obviously frustrates the purpose of the [*sic*] Congress when the EB-5 law was enacted." *Id.*

USCIS denied Plaintiff's application, finding that she failed to cure the deficiencies listed in the NOID including "evidence to demonstrate the source of funds used by non-EB-5 members to invest in the project." CAR 823–30. Plaintiff then appealed to the Administrative Appeals Office, which withdrew the finding that Plaintiff had not placed her capital at risk, but maintained that Plaintiff failed to show that all capital invested in the NCE derived from lawful sources. CAR 1250–59, 1273–74. Plaintiff then filed a Motion to Reconsider the remaining issue of whether all capital invested originated from lawful sources, which the AAO dismissed. CAR 1344–47.

### B.    Procedural Background

Plaintiff filed her original complaint in this action on June 2, 2025, and a first amended complaint on August 12, 2025. ECF 1, 10. On February 27, 2026, Plaintiff filed a motion for summary judgment. ECF 28. Defendants filed a cross-motion for summary judgment and opposition to Plaintiff's motion. ECF 29. Plaintiff replied. ECF 32. Defendants replied. ECF 37. The parties consented to magistrate judge jurisdiction. ECF 4, 7.

## II.    LEGAL STANDARD

In the Ninth Circuit, a decision to deny a visa under the immigrant investor program is subject to judicial review. *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 691–92 (9th Cir. 2003); *see also Repaka v. Beers*, No. 13-cv-05 BTM-RBB, 2014 WL 50813, at *2 (S.D. Cal. Jan. 6, 2014) ("For jurisdiction under the [Administrative Procedures Act], the agency action at issue must be final, it must adversely affect the party seeking review, and it must be non-discretionary.") (quotation and citation omitted). "[T]he authority to issue a visa under the immigrant investor program is not specified by any statute to be discretionary. Instead, the authority comes directly from [8 U.S.C.] § 1153(b)(5), which both mandates issuance of such visas . . . and sets out a series of standards for eligibility that the visa petitioner must meet." *Spencer Enterprises*, 345 F.3d at 691–92.

A court may set aside a final agency decision if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency abuses its discretion "if there is no evidence to support the decision or if the decision is based on an improper understanding of the law." *Ferreira v. Mayorkas*, 767 F. Supp. 3d 929, 936 (N.D. Cal. 2025) (citing *Kazarian v. U.S. Citizenship & Immigration Svcs.*, 596 F.3d 1115, 1118 (9th Cir. 2010)). "To determine whether an agency violated the arbitrary and capricious standard, [the] court must determine whether the agency articulated a rational connection between the facts found and the choice made." *Id.* "In order for the court to confirm the agency's decision as rationally connected to the facts, the agency must have considered 'substantial evidence' in support of its decision." *Id.* (quoting *Nakamoto v. Ashcroft*, 363 F.3d 874, 881–82 (9th Cir. 2004)). "The substantial evidence standard is 'deferential' and requires affirmation of the agency decision 'unless the evidence is so compelling that no reasonable fact finder could fail to find the facts were as [plaintiff] alleged.'" *Id.* (citing *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003)).

"Courts routinely resolve APA challenges by summary judgment." *GCCG Inc. v. Holder*, No. C 13-974, 2013 WL 6175180, at *3 (N.D. Cal. Nov. 25, 2013) (citing *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1481 (9th Cir. 1994)). The district court "is not required to resolve any facts in a review of an administrative proceeding." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). In deciding a motion for summary judgment, the district court "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*

## III.    DEFENDANTS' DENIAL OF PLAINTIFF'S EB-5 APPLICATION VIOLATED THE APA

Plaintiff argues USCIS denied her EB-5 application because it misconstrued § 204.6(g)(1), which states that Plaintiff must only prove the lawful source of her own capital. ECF 28 at 11–19. Defendants argue that the regulation requires Plaintiff to prove

4

the lawful source of funds for all other investors in the project, as demonstrated by the plain text and the agency's prior decisions.  ECF 29 at 15–18.

An agency's interpretation of its own regulations can only be entitled to deference "if [the] regulation is genuinely ambiguous." *Kisor v. Wilkie*, 588 U.S. 558, 573 (2019).  A court must use "all the standard tools of interpretation" before determining that a regulation is ambiguous.  *Id.*  These tools include evaluating "the plain text of the [regulation], its object and policy, the law's surrounding provisions, and the legislative history of its enactment." *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020).  If the regulation is truly ambiguous, the agency's interpretation must be reasonable.  *Kisor*, 588 U.S. at 573.  Even then, the interpretation may still not be entitled to deference if "countervailing reasons" outweigh the presumption that Congress intended courts to defer to the agency in interpreting its own ambiguous rules.  *Id.* Countervailing reasons include: (1) the agency's interpretation represents an ad hoc rather than "authoritative" or "official" position; (2) the agency's interpretation does not "implicate its substantive expertise"; and (3) the agency's interpretation does not reflect its "fair and considered judgment." *Id.* at 577–79 (internal quotations omitted).

The Court first examines the plain text of § 204.6(g)(1) which provides, in relevant part, that "[t]he establishment of a new commercial enterprise may be used as the basis of a petition for classification as an alien investor even though there are several owners of the enterprise . . . provided that the source(s) of *all* capital invested is identified and *all* invested capital has been derived by lawful means." (emphasis added).  This language offers no support for Defendants' proffered interpretation that EB-5 applicants must prove the lawful source of funds of all other project investors.  The language is clear— "[m]ultiple investors may aggregate their investments, and one NCE can serve as the basis for multiple EB-5 petitions so long as each investor individually meets the monetary and job creation." *Gutta v. Renaud*, No. 20-cv-06579-DMR, 2021 WL 533757, at *1 (N.D. Cal. Feb. 12, 2021).  This reading comports with the regulation's other provisions.  For example, § 204.6(j) provides that "[a] petition submitted for classification as an alien

entrepreneur must be accompanied by evidence that the alien has invested or is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the United States . . . ." If Defendants' reading were correct, USCIS likely would have included an explicit requirement to provide the lawful source of all other investors in the project. *See also, e.g.*, § 204.6(e) (defining "capital" as "cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien investor" without reference to the assets of "all other investors"). As such, the regulation is not ambiguous, so Defendants' interpretation is not entitled to deference.

And even had the Court found the regulation to be ambiguous, Defendants' interpretation is unreasonable, ad hoc, and does not reflect fair and considered judgment. *Kisor*, 588 U.S. at 573. The statute from which the regulations originate, 8 U.S.C. § 1153(b)(5), supports the Court's interpretation that an EB-5 applicant is not required to provide the lawful source of funds of all project investors. As the USCIS Policy Manual acknowledges, "Congress created this employment-based 5th preference (EB-5) immigrant visa category to benefit the U.S. economy by providing an incentive for foreign capital investment in commercial enterprises that create or preserve U.S. jobs." USCIS Policy Manual, Part G, Chapter 1. Congress's intention to infuse the U.S. economy with foreign capital investments would be effectively blocked if every EB-5 applicant was required to prove the lawful source of every other investor's funds in a project, including those of U.S. citizens. Instead of creating an incentive, Defendants' interpretation would subject each EB-5 applicant to an administrative impossibility wherein the applicant would be responsible for obtaining and providing each investor's private source of funds' information in a situation guaranteed to have at least "multiple" investors. 8 C.F.R. § 204.6(g)(1). But § 1153(b)(5) contains no such indication of that desire. *See, e.g.*, § 1153(b)(5)(D)(ii)(I) (defining "capital" as "cash and all real, personal, or mixed tangible assets owned and controlled *by the alien investor*") (emphasis added).

Defendants would have this Court conclude that every EB-5 applicant seeking to join a new commercial enterprise prove the lawful source of funds of innumerable other

6

investors in the project, including lawful U.S. citizens, flies in the face of Congress's intent. Congress included the lawful source of funds requirement to "to serve a valid government interest; i.e., to confirm that the funds utilized in the program are not of suspect origin." *Spencer Enters., Inc.*, 229 F. Supp. 2d at 1039; *see also* 8 C.F.R. § 204.6(e) (excluding from the definition of investment capital any "assets acquired, directly or indirectly, by unlawful means"). Defendants have not offered a compelling reason why Congress would want USCIS to review investment capital by non-EB-5 applicants or U.S. citizens, and the Court can think of none.

The Court is also not persuaded by Defendants' cited authorities. ECF 29 at 17–18. Defendants rely upon unpublished dispositions which "are neither precedent nor definitive agency interpretations." *Zabadi v. Chertoff*, No. C 05-03335 WHA, 2005 WL 3157377, at *4 (N.D. Cal. Nov. 22, 2005) (quoting *Chan v. Reno*, 113 F.3d 1068, 1072–73 (9th Cir. 1987) (cautioning against use of unpublished BIA decisions to define the agency's interpretation of a statute); 8 C.F.R. § 1003.1 (g)(2) ("Selected decisions . . . will be published and serve as precedents in all proceedings involving the same issue or issues."). Defendants do not cite a single published decision supporting their interpretation of § 204.6(g). *See generally* ECF 29, 37. A handful of decisions from 1998 and one from 2012 are a far cry from what Defendants purport to be "three decades of consistent agency practice and decisions." ECF 29 at 17. Accordingly, because Defendants acted arbitrarily and capriciously, the Court grants Plaintiff's motion for summary judgment on her APA claim.

## IV.   THE COURT GRANTS PLAINTIFF SUMMARY JUDGMENT ON HER PROCEDURAL DUE PROCESS CLAIM

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts "analyze a procedural due process claim in two steps. The first asks whether there exists a liberty or property interest which has been interfered with by

7

the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013) (quoting *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012), *cert denied*, 568 U.S. 868 (2012)).

Plaintiff has stated a property interest in her EB-5 visa. Plaintiff "has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source," here, the INA and its implementing regulations. *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). "Although procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, such an interest is created if the procedural requirements are intended to be a significant substantive restriction on . . . decision making." *Id.* (cleaned up). "[T]he authority to issue a visa under the immigrant investor program is not specified by any statute to be discretionary. Instead, the authority comes directly from [8 U.S.C.] § 1153(b)(5), which both mandates issuance of such visas . . . and sets out a series of standards for eligibility that the visa petitioner must meet." *Zhao v. Napolitano*, No. SAcv 1301185 JVS (ANx), 2014 WL 12570248, at *6 (C.D. Cal. Mar. 31, 2014) (quoting *Spencer Enterprises*, 345 F.3d at 691–92). Because there are significant restrictions on whether to grant or deny an EB-5 visa, Plaintiff has stated a property interest.

Plaintiff has also demonstrated that Defendants failed to provide fair notice in denying her EB-5 application. Where a protected property interest is involved the Due Process Clause requires certain procedural minimums. *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016). "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citations omitted). In a fair notice challenge, a court considers whether a law or regulation "fails to provide a person of ordinary intelligence fair notice of what is

8

prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). As discussed at length above, § 204.6(g)(1) did not provide Plaintiff with fair notice that she would need to provide the source of other investors' funds in the project. The fact that Plaintiff was given opportunities to cure the alleged deficiency after the fact does not change the analysis. Notice is required so that people "may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Had Plaintiff known of this requirement, she could have made contractual arrangements regarding co-investors' funds before making her investment or chosen not to invest at all. ECF 28 at 27. Accordingly, the Court grants Plaintiff's motion for summary judgment on her due process claim.

## V.   THE COURT GRANTS DEFENDANTS' SUMMARRY JUDGMENT ON PLAINTIFF'S EQUAL PROTECTION CLAIM

Defendants argue Plaintiff waived her equal protection claim because her motion failed to address it. ECF 29 at 22. Plaintiff argues she did not waive her claim just because she did not specifically reference it by name. ECF 32 at 29–30.

Although the Fifth Amendment to the United States Constitution does not contain an Equal Protection Clause, the Fifth Amendment's Due Process Clause includes an equal protection component. See *Bolling v. Sharpe*, 347 U.S. 497, 499–500, (1954); *see also Buckley v. Valeo*, 424 U.S. 1, 93 (1976) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment."). The purpose of equal protection is to protect individuals from arbitrary and intentional discrimination. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000). Plaintiff has not alleged membership in a protected class. Nonetheless, a successful equal protection claim can be brought by a "class of one" when a plaintiff "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* However, such claims must show that the plaintiff was discriminated against intentionally, rather than accidentally or randomly. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not demonstrated that she is entitled to summary judgment on her equal protection claim. Plaintiff argues that she was treated differently than two other EB-5 applicants who invested in the same project but has not shown she was intentionally discriminated against. ECF 32 at 18–20. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's equal protection claim.

## VI.    PLAINTIFF IS GRANTED EQUITABLE RELIEF

Defendants argue Plaintiff should not be granted equitable relief because her other claims fail. ECF 29 at 22. Not so. Because the Court found Defendants' acted arbitrarily and capriciously in denying Plaintiff's EB-5 application, the Court grants Plaintiff's summary judgment on her claim for equitable relief and remands the case to Defendants to adjudicate her application within thirty days without requiring Plaintiff to prove the lawful source of funds of her co-investors.

## VII.    CONCLUSION

Accordingly, the Court grants in part and denies in part the parties' Motions for Summary Judgment as follows:

- Plaintiff's Motion for Summary Judgment is GRANTED as to her APA, due process, and equitable relief claims;

- Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's equal protection claim; and

- The Court REMANDS Plaintiff's EB-5 application to Defendants to adjudicate within thirty days without requiring Plaintiff to prove the lawful source of her co-investors' funds.

**IT IS SO ORDERED.**

Dated:  June 9, 2026                                        _____

NATHANAEL M. COUSINS
Chief United States Magistrate Judge

United States District Court
Northern District of California

10